GRAND LODGE OF COLORED KNIGHTS OF PYTHIAS *v.* LEOTINE SEAY.

[63 South. 571.]

INSURANCE. *Action on fraternal beneficiary certificate. Question for jury.*

> In a suit upon a policy in a fraternal order, where the insured died within thirty days of the issuance of the policy and the by-laws of the order provided that no liability should attach to the order on its policies, until after the expiration of thirty days from their issuance, a peremptory instruction for defendant should have been given.

APPEAL from the circuit court of Warren county.

HON. H. C. MOUNGER, Judge.

Suit by Leotine Seay against the Grand Lodge of Colored Knights of Pythias. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*W. J. Latham,* for appellant.

After reviewing all the evidence and the law, the determining question in this case, considered on its merits, is whether or not under the laws of the order, the contract of Seay had matured. To reach the correct result we must look to the contract itself. It is elementary, and needs no argument, that the policy and Constitution and by-laws of the order in force at the time of the membership of Seay constitute the contract between him and the order. See *Thompson et al.* v. *Thompson et al.,* 57 So. 291.

The constitution and by-laws which were in force when Seay accepted his policy and which continued in force until his death, provided that the policy would become valid after thirty days from the date of its issuance, and in order that a beneficiary might become entitled to the

insurance fund, it was necessary that the insured live thirty days after receiving his policy of insurance.

The defendant made proof that such was the law, that is to say, that the laws of the order at·the time of the membership and death of Seay provided that before the policy should become valid, it must have been in force for thirty days. The testimony of three ·witnesses who had seen and read the law, and who knew its provisions, and knew that it was necessary under them that a policy should be in force for thirty days before one became effective. This provision applied alike to Seay's policy and all others.

Ordinarily, the laws of such an organization are proven by introducing the book which contains the provisions in controversy. But in the instant case, such parol testimony became necessary because of the·peculiar circumstances, surrounding the case. It will be recalled that Seay had been dead for more than six years when the case was called for trial, there had been many changes in office since his death, and plaintiff changed her declaration during the trial so as to make Seay a member of a different lodge to that which she had asserted he was in her declaration and against which charge the defendant objected, excepted and moved for a continuance of the cause.

Again notice was given on the night preceding the day of trial only, to produce the laws of the order for use in this cause, and diligent search was made for a copy of those in force at the time of the membership and death of Seay.

The testimony as to what the provisions of the law were should have been accepted as conclusive and true by the court (that testimony not having been controverted by any competent testimony), and the peremptory instruction asked for should have been given.

The jury had no right to arbitrarily refuse the testimony of witnesses, who were unimpeached, and whose

testimony was uncontradicted. We repeat that no testimony was offered which was competent to show that such was not the law.

We think the court should have given the appellant a new trial upon its motion for a new trial upon the filing of the book of laws which was in force during the membership and death of Seay and which contained the provisions holding that the policy would not become valid until thirty days from the date of its issuance. The reasons for the failure to have that book at the trial were sufficiently given in the testimony of Highland and for other reasons given in the motion.

*H. H. Coleman,* for appellee.

Counsel's statement that the constitution and by-laws in force at the time of the issuance of the policy of insurance to the deceased was part of the contract of insurance, as held by this court in the case of *Thompson et al.* v. *Thompson et al.,* 57 So. 291, is correct; and we don't attempt to deny it, but we contend that the policy was in force in accordance with the provisions of the constitution and by-laws at and before the member's death.

We contend that the question was resolved in the trial, had in the circuit court of Warren county, as a matter of fact and not of law. The testimony of Ora Seay and A. B. Sublett, shows that deceased was a member of Eureka Lodge, some months before he became affiliated with Reubin Lodge; and this testimony is uncontradicted.

The constitution and by-laws of the Colored Knights of Pythias require a member to take out a policy of insurance upon his life immediately upon becoming a member of the order; and it logically follows that in the absence of positive proof, to the contrary, the presumption is that a member has complied with the laws of the order. It is in evidence by the witness Sublett that he and Thomas Seay, and others, after being made Pythians, "set up," as he calls it, were given a letter of transfer

by the grand deputy, J. M. Head, to the Eureka Lodge, near Edwards, Mississippi, and that he went to that lodge with the letter. That he got his policy there and knows that Seay got his, because of the understanding that the five (5) transferees were to get them. That he held his policy a long time before Reubin Lodge was set up.

Ora Seay testified that her father often told her, without objection of appellant, that he was a member of Eureka Lodge, and upon occasion of his going there, he told her where he was going.

The claim of surprise is logically and entirely untenable, because under the proof adduced, appellant could not possibly have been surprised had appellee shown that deceased was a member of fifty (50) lodges; because in its correspondence it denied that he was a member of the order at all. In the book presented in evidence his name didn't appear; so then if there was surprise, appellant was as much surprised to learn that deceased was a member of the Reuben Lodge, as it could have been to learn that he was a member of the Eureka Lodge. If not, why not?

Is it possible that the grand lodge officers issue their policies to member of subordinate lodges and there is no record made of them, having obligations outstanding with no record whatever? Is it conceivable that an insurance order would issue a policy of insurance, whether the premium be paid or not, without any record in the home office of its issuance, and to whom; and would allow them to remain outstanding with no effort to call them in and cancel them, as stated by Hyland and as shown by the letters of Buckingham to appellee's counsel?

No, not even a lodge presided over by High Browns and High Yellows would conduct business in such a slipshod manner. If they did, as was said by counsel in his argument to the jury, such lodge should be in the

hands of a receiver, in order that the confiding masses of the colored population should not be defrauded of their money, and that a real beneficial order should be maintained. The truth is that Seay paid his endowment. The very amount that Masique says the deceased member paid the master of finance tallies with the amount Hyland, the grand master of exchequer, says he should have paid. It has been held by this court that subordinate lodges are agents of the grand lodge, reported in *Murphy* v. *Ind. Order, etc.,* 77 Miss. 830.

Therefore, then, if this honorable court believes, as the jury did, that the deceased had paid his endowment to the proper officer, and that he failed to report it or send it in to the master of exchequer of the grand lodge; yet, nevertheless, whether his name appears on the record or not he was a member in good standing, and his beneficiary had a right to recover from the grand lodge the amount of this policy, together with the interest, damage and costs.

SMITH, C. J., delivered the opinion of the court.

The peremptory instruction requested by appellant should have been given. This suit, which was instituted upon a policy held in appellant's order by Thomas Seay, was instituted more than five years after his death, and it appears without material conflict, in the competent testimony, that he died within thirty days after the issuance of the policy, and that the by-laws then in force provided that no liability should attach to the order on its policies until after the expiration of thirty days from their issuance.

Reversed, and cause dismissed at the cost of appellee both here and in the court below.

*Reversed.*